a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARVELL ANTONIO CULP, Plaintiff | CIVIL ACTION NO. 1:16-CV-1267-P |
| VERSUS | CHIEF JUDGE DRELL |
| JOEL ALEXANDRE, ET AL. Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Pro se Plaintiff Marvell Antonio Culp ("Culp") (#24896-076) filed suit under the Federal Tort Claims Act ("FTCA") and <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>.[1] Culp is an inmate in the custody of the Federal Bureau of Prisons, incarcerated at the Federal Correctional Institution in Pollock, Louisiana. Culp complains about the medical care he received for a fractured wrist. He names as defendants Dr. Joel Alexandre, Dr. Dandan He, Nurses S. Pennison, Jacinda Fruge, Alex Horton, C. Reimer, Maxwell Dunbar, Medical Assistants N. Smack, A. Watson, N. Ashli, Administrator K. Williams, Nurse Practitioner J. Smith, and Physician Assistants Willie Vasquez and M. Carbo.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

---

[1] In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C. § 1983.

I. **Background**

Culp alleges that he injured his right wrist playing softball on May 1, 2014. (Doc. 1, p. 12). Culp was diagnosed with a right wrist scaphoid fracture. (Doc. 1, p. 13). He was provided a medical duty status limiting all sports activities for six months. (Doc. 1, p. 20). Another x-ray was scheduled for May 14, 2014. (Doc. 1, p. 20).

On May 8, 2014, Culp was examined by Physician Assistant Vasquez after asking for a stronger pain medication due to a sharp pain. Culp denied numbness or increased swelling of his fingers. He was prescribed acetaminophen/codeine twice daily for seven days. (Doc. 1, p. 20). However, on May 12, 2014, Culp violated pill-call rules by walking off with his acetaminophen/codeine. The following day, the medication with codeine was discontinued because of Culp's "improper pill line procedures." (Doc. 1, p. 21).

On May 15, 2014, Culp was transported to Alexandria, Louisiana for another wrist x-ray. Culp received a thumb spica cast. (Doc. 1, p. 22). Culp was informed that the fracture could take 12 weeks to heal, and surgical treatment would be considered if no improvement was noted from the cast. (Doc. 1, p. 22).

Culp attended a follow-up appointment on May 19, 2014. He requested acetaminophen with codeine because ibuprofen caused him stomach pain. Culp was prescribed naproxen 500mg twice daily, acetaminophen 325 mg three times daily, and misoprostol for stomach issues caused by the medication. (Doc. 1, p. 23).

On May 21, 2014, Culp was issued a medical convalescence pass due to his cast and arm sling. (Doc. 1, p. 24).

On May 22, 2014, a request for orthopedic surgery was approved by the Utilization Review Committee. (Doc. 1, p. 24).

At a follow-up appointment on May 29, 2014, the fracture had not improved. Culp's reported pain was 7/10, and he was still wearing the spica cast. (Doc. 1, p. 24). An orthopedic consultation was scheduled.

On June 6, 2014, Culp was transported to Alexandria for additional x-rays. The x-rays showed significant cystic changes. (Doc. 1, p. 25). The physician ordered that Culp continue us use the spica cast and return for follow-up x-rays. The physician recommended allowing three months for the fracture to heal. If the fracture was not healed in three months, then the doctor would recommend surgery. (Doc. 1, p. 25).

On June 24, 2014, Culp returned to Alexandria for a follow-up x-ray. No definitive healing was evident, and Culp had cystic changes consistent with avascular necrosis. The doctor ordered an MRI to determine proper surgical procedure. (Doc. 1, p. 26). Culp claims that the defendants ignored the MRI order. (Doc. 1, p. 13).

A request for additional radiologic testing was approved by the Utilization Review Committee on July 14, 2014. (Doc. 1, p. 28).

Culp sought medical treatment on July 31, 2014, because his cast got wet in the shower and smelled bad. (Doc. 1, p. 28). Physician Assistant Vasquez reapplied a new short arm fiberglass thumb spica cast. The treatment plan notes that the MRI was approved and pending. (Doc. 1, p. 29).

Culp received an MRI on September 9, 2014, which revealed a displaced horizontal fracture of the scaphoid, but no signs of osteonecrosis. (Doc. 1, pp. 29-30). A recommendation was made for a bone graft and fixation with a screw, to be performed by a hand surgeon due to cystic formation and chronicity of the fracture. (Doc. 1, p. 31).

A request was submitted for a surgical evaluation by a hand specialist, and the request was approved on October 1, 2014. (Doc. 1, pp. 32-33). On October 14, 2014, Assistant Health Services Administrator K. Williams informed Culp that he would be examined by an "in-house orthopedic provider next week, and it will be determined if a hand specialist is necessary." (Doc. 1, p. 33).

On November 10, 2014, Culp complained in writing that it had been over six months since his wrist fracture, and the treatment recommended had become more complex due to the delay in surgical care. (Doc. 1, p. 34). Ms. Watson replied to Culp's complaint that she was working with the orthopedic specialist daily to get the problem addressed. (Doc. 1, p. 34).

On January 13, 2015, Culp underwent a proximal row carpectomy under general anesthesia. (Doc. 1, p. 38).

An orthopedic specialist conducted a post-operative examination and recommended occupational therapy. (Doc. 8, p. 3). Culp was evaluated by a therapist on February 13, 2015, and was provided with instruction on range of motion exercises. Culp was provided a soft exercise ball and an exercise band to use for rehabilitation. (Doc. 8, p. 3). Culp had a follow-up appointment with the therapist

the following month. (Doc. 8, p. 3). In April 2015, the orthopedic specialist examined Culp. Because Culp was doing well, the specialist recommended follow-up as needed. (Doc. 8, p. 3).

II. Law and Analysis

    A. Culp's complaint is subject to screening under §§ 1915(e)(2) and 1915A.

Culp is a federal inmate who has been allowed to proceed *in forma pauperis*. (Doc. 7). As a prisoner seeking redress from an officer or employee of a governmental entity, Culp's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. See Martin v. Scott, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, Culp's complaint is also subject to screening under § 1915(e)(2). Both §§ 1915(e)(2)(B) and 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

5

B.     Culp fails to allege deliberate indifference by the defendants.

In Bivens, the Supreme Court held that the violation of a person's constitutional rights by a federal official may give rise to an action for monetary damages in federal court. A Bivens action is analogous to an action under § 1983, but applies to constitutional violations by federal officials rather than state officials. See Abate v. Southern Pac. Transp. Co., 993 F.2d 107, 110 n. 14 (5th Cir. 1993).

Culp alleges that Defendants have violated his constitutional rights under the Eighth Amendment. Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with "deliberate indifference" to the serious medical needs of prisoners. See Farmer v. Brennan, 511 U.S. 825, 834, (1994); Estelle v. Gamble, 429 U.S. 97, 105 (1976). The Farmer Court defined the test for "deliberate indifference" as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837.

Deliberate indifference "is an extremely high standard to meet." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (citation omitted). An inmate must show that prison personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs." Domino v. Tex. Dep't Crim. J.,

239 F.3d 752, 756 (5th Cir. 2001) (quoting <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Culp has not presented factual allegations indicating that the defendants acted with deliberate indifference. There are no factual allegations that any defendant ignored Culp's complaints or intentionally treated him incorrectly. To the contrary, Culp's factual allegations and exhibits indicate that he was regularly provided with medical care, received several x-rays, an MRI, treatment recommendations from multiple physicians, and, ultimately, surgical intervention. (Doc. 1, p. 20-66). The outside physicians recommended allowing the fracture three months to heal before considering surgery. (Doc. 1, pp. 22, 25).

An MRI was recommended on June 24, 2014. The following day, Nurse Practitioner J. Smith submitted the MRI request for approval. (Doc. 1, p. 27). The Utilization Review Committee referred the request to the Regional Medical Director for approval, as required by policy. (Doc. 1, p. 28). After the MRI was approved, it was scheduled for September 9, 2014. (Doc. 1, p. 29). Though Culp may have not received the MRI as promptly as he desired, or perhaps even as promptly as would be ideal, any substandard care alleged does not amount to deliberate indifference. <u>See</u> <u>Walker v. Reese</u>, 364 F. App'x 872, 875 (5th Cir. 2010).

    C.    <u>Culp's FTCA claim is timely and exhausted.</u>

Culp seeks monetary damages for negligence under the Federal Tort Claims Act, 28 U.S.C. § 2672 ("FTCA"). The FTCA provides a limited waiver of the sovereign immunity of the United States for torts committed by federal employees acting within

7

the scope of their employment. 28 U.S.C. § 1346(b); <u>Berkovitz by Berkovitz v. United States</u>, 486 U.S. 531, 535 (1988). The United States, and not the responsible agency or employee, is the proper party defendant in a suit under the FTCA. See <u>Galvin v. Occupational Safety & Health Admin.</u>, 860 F.2d 181, 183 (5th Cir. 1988).

Culp presented an administrative tort claim through the Bureau of Prisons, which was denied on March 3, 2016. (Doc. 8, p. 2). Culp filed suit within six months of the denial of his claim, as required under the FTCA. 28 U.S.C.A. § 2401. Because the United States is the proper party defendant in an FTCA suit, the United States should be added as a defendant in this case.

## III. <u>Conclusion</u>

For the foregoing reasons, IT IS RECOMMENDED that Culp's <u>Bivens</u> claim be DENIED and DISMISSED with prejudice against all defendants, and that the United States be added as the sole defendant for Culp's FTCA claim, which will be served pursuant to a separate order.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

8

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __13th__ day of October, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge